



FILED

JAN 2 2 2016

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

1    <u>FOR PUBLICATION</u>

2    **UNITED STATES BANKRUPTCY COURT**

3    **EASTERN DISTRICT OF CALIFORNIA**

4

5    In re:                              )    Bk. No. 10-53374-C-7
                                         )
6    JOHN ERNEST BORSOS and              )
     CLARE HART BORSOS,                  )    Adv. No. 11-02183
7                                        )
          Debtors.                       )
8    _____)
                                         )
9    UNITED HEALTHCARE WORKERS-          )
     WEST, an unincorporated             )
10   association,                        )
                                         )
11        Plaintiff,                     )    **OPINION**
                                         )
12   v.                                  )
                                         )
13   JOHN ERNEST BORSOS,                 )
                                         )
14        Defendant.                     )
     _____)

15

16                    _____

17   Dan Siegel, Siegel & Yee, Oakland, California, for John Ernest
          Borsos.

18
     Jeffrey B. Demain (argued), Jonathan Weissglass, Altshuler Berzon
19        LLP, San Francisco, California, for United Healthcare
          Workers-West.
20

21   CHRISTOPHER M. KLEIN, Bankruptcy Judge:

22        A reversal on appeal voided a money judgment on which wages

23   had been garnished.  The garnishee wants his money back.

24        The backstory is a testosterone-fueled vendetta by Service

25   Employees International Union ("SEIU") against former officers of

26   a SEIU local who lost a power struggle with SEIU and, after SEIU

27   ousted them, became officers in a newly-formed rival union.  SEIU

28   sued and obtained money judgments against the outcasts.

One of those judgment debtors seeks to recover $15,830.04 garnished from his wages in the interval between (1) entry by this court of a judgment excepting SEIU's money judgment from discharge in bankruptcy and (2) the subsequent reversal on appeal of that nondischargeability determination.

SEIU resists restitution by making a counter-motion to enforce a settlement agreement that was not executed and by sidestepping the unjust enrichment question.

There being no enforceable settlement agreement, the motion to order return of garnished funds due to reversal of the nondischargeability judgment on which the garnishments were premised will be GRANTED under the analysis recently restated in Restatement (Third) of Restitution § 18 and, independently, to remedy violation of the bankruptcy discharge injunction.

## Facts[1]

Testosterone. SEIU took over its local, United Healthcare Workers-West ("UHW"), and replaced its officers, including John Borsos, for resisting SEIU's command to transfer 65,000 members without a vote to another SEIU local.

The day after their ouster, the former officers became officers and employees of a newly-formed rival, National Union of Healthcare Workers ("NUHW"), which began competing with UHW.

War erupted. See, e.g., SEIU v. NUHW, 598 F.3d 1061, 1064-66 (9th Cir. 2010). SEIU won.

Vendetta. Not content merely to win the power struggle,

---

[1]These facts supplement oral findings made at close of trial per Fed. R. Civ. P. 52, incorporated by Fed. R. Bankr. P. 7052.

SEIU and UHW sued the ousted officers, and NUHW, and others for damages for alleged misuse of union funds in breach of fiduciary duty during the weeks before the SEIU takeover. <u>SEIU, et al. v. Rosselli, et al.</u>, No. 09-CV-0404, N.D. Cal.

After an ugly fight, SEIU and UHW obtained jury verdicts against various defendants. As District Judge Alsup noted, "the love lost between the parties during this action was so great that zero cooperation could be expected." <u>SEIU v. Rosselli</u>, 2010 Westlaw 4502176, at *3 (N.D. Cal. 2010) (Order on Bill of Costs).

The SEIU/UHW judgment against Borsos was $66,600.00, plus costs of $9,245.17. There was no stay pending appeal.

Borsos filed a chapter 7 bankruptcy case on December 22, 2010, as of which date $2,019.74 had been garnished from his NUHW wages. The bankruptcy automatic stay stopped the garnishments.

Vendetta. UHW, which is enforcing the SEIU judgment, filed nondischargeability actions against Borsos and others to except the judgment debts from discharge as incurred by fiduciary fraud or defalcation per 11 U.S.C. § 523(a)(4). <u>See, e.g.</u>, <u>UHW v. Kristal (In re Kristal)</u>, 464 B.R. 404 (Bankr. C.D. Cal. 2011).

After trial, this court excepted the judgment debt from discharge based on law of the circuit applying a strict-liability to the § 523(a)(4) fiduciary defalcation discharge exception, under which view a culpable state of mind is not essential.

Borsos appealed. While that appeal was pending, the Supreme Court held that the fiduciary defalcation discharge exception under 11 U.S.C. § 523(a)(4) requires proof of a culpable state of mind. <u>Bullock v. BankChampaign</u>, 133 S.Ct. 1754, 1759-60 (2013). On that account, this court's judgment was reversed and remanded.

Vendetta.  On remand, UHW elected to pursue a re-trial and to attempt to prove that Borsos had the requisite culpable state of mind.  UHW did not carry its burden of proof on that question. Hence, judgment was rendered declaring the SEIU/UHW judgment debt against Borsos to have been discharged.  There was no appeal.

In the interval between this court's first judgment and reversal of that judgment, UHW garnished $15,830.04 from Borsos' NUHW wages.  As those garnishments turned out to have been on account of a judgment that became "void" by operation of 11 U.S.C. § 524(a)(1), Borsos filed a motion seeking restitution.

One issue at the restitution hearing was whether a NUHW Board resolution to reimburse NUHW individual defendants for sums garnished was conditioned on an obligation to reimburse NUHW in case of later restitution.  The resolution's text did not mention reimbursement.  But this trier of fact believed (and so finds as fact) the testimony that the resolution was adopted on the condition that garnishees agree to refund to NUHW reimbursed amounts later recovered.  Such a condition is consistent with recognition of the fiduciary duties of union officials that, ironically, was the central issue in the SEIU damages action for which the board was authorizing indemnification.[2]

Borsos (who no longer works for NUHW) was reimbursed by NUHW (which survives as a union) for the amounts garnished and remains obliged to reimburse NUHW for amounts restored to him.

Additional facts are stated in the discussion below.

---

[2]The legal fees incurred by SEIU/UHW pursuing this vendetta cause one to wonder whether they have been adhering to standards they say they were vindicating in the SEIU damages action.

## Jurisdiction

Federal subject matter jurisdiction is founded on 28 U.S.C. § 1334(b).  This is a core proceeding that a bankruptcy judge may hear and determine as of right.  28 U.S.C. §§ 157(b)(2)(I) & (O).

## Discussion

The equitable right to restitution of what has been taken by enforcement of a judgment that is subsequently reversed has an ancient pedigree.  It is a matter of inherent authority of every court in the name of doing what is right.  The key questions are whether the right has been surrendered in some respect or whether inequity would result from restitution.

I

By 1710, it was established in English law that restitution was required where money is levied and paid in execution of a judgment that is later reversed.  <u>Anonymous</u>, 2 Salkeld, Reports of Cases Adjudg'd in the Court of King's Bench ... to the Tenth Year of Queen Anne, 288 (printed 1718), <u>cited with approval</u>, <u>Bank of United States v. Bank of Wash.</u>, 31 U.S. (6 Pet.) 8, 17 (1832).

The Supreme Court has repeatedly applied this subsequent reversal restitution doctrine.  <u>E.g.</u>, <u>Bank of United States</u>, 31 U.S. at 16-17; <u>NW Fuel Co. v. Brock</u>, 139 U.S. 216, 219-20 (1891); <u>Arkadelphia Milling Co. v. St. Louis S.W. R. Co.</u>, 249 U.S. 134, 145-46 (1919); <u>Baltimore & O. R. Co.</u>, 279 U.S. 781, 786 (1929).

No particular form of action is required.  Sometimes it is, as here, done by motion.  <u>NW Fuel Co.</u>, 139 U.S. at 217. Sometimes by independent action for money had and received or

5

1   simple contract (assumpsit). <u>Bank of United States</u>, 31 U.S. at

2   17. Formerly, a writ of scire facias was often used.[3]  Courts

3   can also act sua sponte. RESTATEMENT (FIRST) OF RESTITUTION § 74,

4   cmt. <u>a</u> (1937) ("RESTATEMENT (FIRST)").[4]

5       Under modern rules, the procedure is even more flexible

6   where the original parties are before the court. RESTATEMENT

7   (THIRD) OF RESTITUTION § 18 (2011) ("RESTATEMENT (THIRD)").[5]

8   _____

9       [3]The writ of scire facias was the old form of action to
    initiate a show-cause proceeding. In federal practice, the writ
10  of scire facias was abolished in 1937 with the adoption of the
    Federal Rules of Civil Procedure. The relief formerly available
11  under a writ of scire facias may now be obtained by "appropriate
    action or motion" under the Civil Rules. Fed. R. Civ. P. 81(b).
12

13      [4]The RESTATEMENT (FIRST) explained the procedural alternatives.

14          *a. Procedure.* The rule stated in this Section is
    applicable to cases where a judgment has been entered upon
15  which money has been paid by the defeated party or property
    has been sold on execution, and where subsequently such
16  judgment is reversed, set aside or modified, because of lack
    of power in the court rendering it, because of errors of
17  law, or for other reasons. In such cases <u>there are various
    methods which can be used for securing restitution</u>. The
18  reversing tribunal can itself direct restitution either with
    or without conditions, or the tribunal which is reversed can
19  on motion or upon its own initiative direct that restitution
    be made. Formerly, a common method of obtaining restitution
20  was by a writ of scire facias quare restitutionem non. In
    spite of the existence of such remedies, however, an
21  independent action of assumpsit can be maintained and the
    claim can be used as a set-off in proceedings in which
22  set-offs are allowed. Likewise, where the judgment which was
    reversed directed the possession of property to be
23  transferred or where execution was levied and property taken
    thereunder, an action for specific restitution can be
24  maintained except as against a bona fide purchaser.
25

26  RESTATEMENT (FIRST) § 74, cmt. <u>a</u> (emphasis supplied), comment
    incorporated by RESTATEMENT (THIRD) § 18, rptr. note <u>b</u>.
27
        [5]The RESTATEMENT (THIRD) explains:
28
        Subject to local procedural requirements, the restitution

                                    6

The most recent Restatement reflects the federal precedents and may be taken as an accurate statement of federal law:

> § 18.  Judgment Subsequently Reversed or Avoided
> A transfer or taking of property, in compliance with or otherwise in consequence of a judgment that is subsequently reversed or avoided, gives the disadvantaged party a claim to restitution as necessary to avoid unjust enrichment.

RESTATEMENT (THIRD) § 18;[6] see, e.g., PSM Holding Corp. v. Nat'l Farm Fin. Corp., 743 F. Supp. 2d 1136, 1141-45 (C.D. Cal. 2010).

Where restitution is sought from the judgment creditor (as opposed to a third party), and where both parties are before the court, restitution is virtually automatic.

The court has wide latitude to control the procedure and may conduct all needed inquiry in a summary proceeding so long as the opposing party is heard.  NW Fuel Co., 139 U.S. at 220.

---

claim described in this section may be asserted in any forum having jurisdiction. Restitution may therefore be decreed by an appellate court as an incident of its power to correct errors. It may be ordered by the original tribunal on remand (either *sua sponte* or on motion); or following reversal even without remand, as an exercise of the court's inherent equitable powers; or in response to a collateral attack on the judgment. Restitution may also be sought in a separate action in any court having jurisdiction.

RESTATEMENT (THIRD) § 18, cmt. b.

[6]The correlative version in the RESTATEMENT (FIRST) was:

§ 74 Judgments Subsequently Reversed
A person who has conferred a benefit upon another in compliance with a judgment, or whose property has been taken thereunder, is entitled to restitution if the judgment is reversed or set aside, unless restitution would be inequitable or the parties contract that payment is to be final; if the judgment is modified, there is a right to restitution of the excess.

RESTATEMENT (FIRST) § 74.

## II

It is of no consequence that the contested garnishments occurred in execution of a money judgment issued by a United States District Court and not by this bankruptcy court.

### A

A general answer to the question of this court's authority is that a prevailing appellant may seek restitution of all things taken under the judgment in the same or an independent action.

In other words, this is a permissible collateral attack. RESTATEMENT (THIRD) § 18, cmt. b.

The critical requirements are that the parties to the Borsos judgment must be before this court and that the garnishing party have an opportunity to be heard. NW Fuel Co., 139 U.S. at 220. Those requisites are present here.

### B

A more precise explanation of this court's authority is that the dispute is within core bankruptcy jurisdiction because the underlying dispute involves the effect of the bankruptcy discharge on the money judgment.

It is a proceeding that relates to the dischargeability of a particular debt.  28 U.S.C. § 157(b)(2)(I).

And it is a proceeding affecting the adjustment of the debtor-creditor relationship.  28 U.S.C. § 157(b)(2)(O).

The judgment, the reversal of which occasions the request for restitution of garnished funds, is a judgment of this court in a nondischargeability proceeding and not the judgment of the

8

district court.

Every court, including this bankruptcy court, has inherent equitable power to correct that which has been wrongfully done — here, enforcement of a judgment that should not have been enforced — by virtue of its process.  <u>Arkadelphia Milling Co.</u>, 249 U.S. at 145-46.

Thus, it makes no difference that the underlying money judgment was entered by a court other than the bankruptcy court. The overlay of bankruptcy results in de facto concurrent jurisdiction over the money judgment.  This court, having created the problem in the first instance with its incorrect judgment excepting the district court's money judgment from discharge, is obliged to skin its own skunk.


III

The parties correctly sense that there is a bankruptcy issue arising from reversal of this court's judgment excepting the judgment debt from discharge.  But they incorrectly focus on the automatic stay; the real problem is the effect of the bankruptcy discharge and accompanying discharge injunction.


A

The relevant chronology begins with the filing of the Borsos chapter 7 case on December 22, 2010.  SEIU/UHW, which had already garnished $2,019.74 from Borsos' NUHW wages, ceased judgment collection.  The Borsos discharge was entered April 8, 2011. This court's judgment excepting the money judgment from discharge was entered March 15, 2012.  The first garnishment of Borsos'

9

wages in reliance upon the judgment excepting the debt from
discharge was on August 3, 2012.   Those post-bankruptcy
garnishments, which totaled $15,830.04, ceased upon reversal of
that judgment by the Bankruptcy Appellate Panel.

It warrants emphasis that we are dealing with a problem of
retroactivity.   At the time, the post-bankruptcy garnishments did
not necessarily offend basic bankruptcy law.

B

The parties engage in a moot debate about whether the
automatic stay invalidated the post-bankruptcy garnishments.   The
automatic stay had expired before the garnishments occurred.

As a matter of law, the automatic stay's protection of the
debtor expired with entry of the discharge on April 8, 2011.   11
U.S.C. § 362(c)(2)(C).   This discharge was not vacated.   Nothing
was left to reinstate with respect to the debtor.

Although the automatic stay continued to protect property of
the estate, post-petition wages are not property of the estate in
a chapter 7 case.   11 U.S.C. §§ 362(c)(1) & 541(a)(6).

Hence, the garnishments of post-petition wages could not
have violated the automatic stay, and the cited cases involving
"reinstatement" of the automatic stay are inapposite.

C

The real problem is that the post-petition garnishments
retroactively offended the bankruptcy discharge and the discharge
injunction.

The discharge "voids" any judgment at any time obtained —

10

i.e. past, present, and future — to the extent that it determines the personal liability of the debtor with respect to a discharged debt.  11 U.S.C. § 524(a)(1).

Correlatively, the discharge "operates as an injunction" against any act to collect a discharged debt as a personal liability of the debtor.  11 U.S.C. § 524(a)(2).

But the § 524 discharge provisions invite uncertainty.  In the sense of formal logic, insulating a debtor from liability on a discharged debt "begs the question" by assuming the conclusion. With respect to any particular debt, § 524(a) assumes that the debt has been discharged.

Ascertaining whether a debt actually has been discharged can be a complex problem.  The Bankruptcy Code excepts a variety of debts from discharge.  11 U.S.C. § 523(a).

Some discharge exceptions, including the alleged § 523(a)(4) fiduciary defalcations here, necessitate judicial determination.

Litigation over discharge status necessarily takes time. Appeals take even more time.  Final determination of whether a debt is discharged cannot be known with certainty until the end of the appellate road.

Here, all relevant collection activity occurred after this court ruled that the debt was excepted from discharge and before that judgment was reversed.  Without a stay pending appeal and in the absence of the automatic stay, the judgment could be enforced immediately.  Enforcement in the context of a nondischargeability judgment means resuming collection.

But, by choosing to enforce a judgment on appeal, SEIU/UHW took the risk that the debt would ultimately turn out to have

1   been discharged and the risk that there would be consequences.

2       The ultimate victory of the debtor after re-trial on remand
3   that was not appealed operated to establish that all post-
4   bankruptcy collections were on account of the debtor's personal
5   liability on a discharged debt.  That, retroactively, meant that
6   the collections were on account of a void judgment and offended
7   the § 524(a)(2) discharge injunction.[7]

8       While punishment with the heavy hand of contempt may not be
9   appropriate in such circumstances, the strategy was not riskless.
10  At a minimum, SEIU/UHW took the risk that the $15,830.04 would
11  turn out to have been collected on a void and unenforceable
12  judgment in violation of the discharge injunction and that an
13  ameliorative remedy would be in order.

14      UHW contends, however, that there was an intervening
15  settlement and that restitution would unjustly enrich Borsos.

16

17                              IV

18      In its counter-motion, UHW says that the restitution issue
19  was resolved by way of a settlement agreement that should be
20  enforced even though Borsos declined to sign the agreement.

21

22

23      [7]The language of the statutory § 524(a)(2) injunction is:

24          (a) A discharge in a case under this title — (2) operates
25      as an injunction against the commencement or continuation of
        an action, the employment of process, or an act, to collect,
26      recover or offset any such [discharged] debt as a personal
        liability of the debtor, whether or not discharge of such
27      debt is waived;

28  11 U.S.C. § 524(a)(2).

                              12

A

The facts relating to the purported settlement warrant separate statement.

UHW's counsel testified that he orally offered on December 16, 2014, a "walk away" settlement in which UHW would not appeal and Borsos would not seek costs or return of garnished funds.

Borsos' counsel responded on December 29, 2014: "We accept your proposal to end this matter. We agree that we will waive fees in exchange for your agreement to waive appeal rights."

UHW's counsel emailed a draft settlement agreement on January 15, 2015, to which Borsos' counsel promptly responded "the agreement is acceptable." Thereupon, UHW's counsel emailed a final version in form suitable for signature.

Borsos' counsel responded to repeated status inquiries with "I am awaiting the return of the release from John Borsos" and "I am doing my best to get John to return it to me."

On February 25, 2015, UHW's counsel sent Borsos' counsel a copy of the settlement agreement executed by UHW.

On March 6, 2015, Borsos' counsel responded that he thought the agreement was merely an exchange of UHW's right to appeal for Borsos' forbearance on costs and that, while UHW could keep the $2,019.74 garnished pre-bankruptcy, UHW should refund the $15,830.14 garnished during the bankruptcy.[8]

_____

[8]The explanation was:

My concern about the settlement agreement is based upon my understanding that the agreement represented simply an exchange of UHW's right to appeal for our forbearance on the costs. However, the agreement as drafted includes a provision (par. 5) requiring Borsos to agree not to seek the refund of funds garnished from his wages during the pendency

13

UHW's counsel replied two hours later that it was too late to renege on the agreement "accepted" by the January 15 email.[9]

Neither Borsos nor his counsel ever signed the settlement agreement.

A routine file review revealed that the clerk of court had mislaid and not entered on docket the judgment signed at the end of trial. The judgment was immediately re-issued and entered on docket on June 1, 2015. That triggered the time to file a notice of appeal. Fed. R. Bankr. P. 8002(a)(1). No appeal was filed.

Borsos' Motion For Return of Property seeking restitution was filed June 18, 2015. UHW responded with a counter-motion to enforce the settlement agreement.

_____

of the bankruptcy.

As you know, Borsos filed for bankruptcy in December 2010. Prior to that date UHW garnished $2019.74 from his NUHW salary. However, after the bankruptcy was filed and the automatic stay went into effect, UHW garnished $9164.76 from Borsos' wages in 2012 and 6665.28 in 2013. We believe that UHW must refund this amounts - a total of $15,830.04.

Siegel to Demain email 03/06/2015, 2:57 p.m.

[9]The response was:

That provision was part and parcel of the settlement from our very first discussion on December 16, 2014, as reflected in my contemporaneous notes from that conversation, and was set forth in the draft settlement agreement that you accepted in your January 15, 2015 e-mail. The only thing left to do is for you and Mr. Borsos to execute the written document to which you have already agreed. Without agreeing as to whether the amounts of the garnished wages recited in your e-mail below are correct (which I haven't checked), any claim for a refund of those amounts has been waived by your acceptance of the settlement agreement. Please return to me the fully-executed settlement agreement.

Demain to Siegel email 03/06/2015, 4:54 p.m.

B

UHW contends that the settlement agreement should be deemed to have been accepted on January 15, 2015.  Citing California precedents, it argues that all that remained was the ministerial act of executing the agreement because all of its terms had been accepted.  This court is not persuaded.

First, the December 29 acceptance ("we agree that we will waive fees in exchange for your agreement to waive appeal rights") is consistent with not having agreed to forego restitution of post-bankruptcy garnishments.  The January 15 email ("the agreement is acceptable") is consistent with a preliminary view of counsel in a context in which the client would still be able to review the text in detail.  "Acceptable" is not "accepted."  This court believed the testimony of Borsos' counsel.  There had not been a final and unequivocal acceptance of the form and of all terms of the settlement agreement.

This is not a situation in which a party was lured into not filing a timely notice of appeal.  UHW knew that Borsos still wanted return of his $15,830.04 as of March 6, 2015.  A notice of appeal would still have been timely as being after the court ruled orally on the record and before the docketing of the judgment by the clerk, which did not occur until June 1, 2015.  Fed. R. Bankr. P. 8002(a).  UHW had plenty of time to appeal.

Finally, the argument that the settlement agreement was binding as of January 15 when counsel said it was "acceptable" suffers from a fatal flaw embedded in paragraph 12 of the settlement agreement:  "This Settlement Agreement shall become binding on the undersigned parties, effective, and enforceable on

the last date of execution shown below."

That no-binding-agreement-until-everyone-has-signed provision would have to be ignored in order to accept UHW's argument.  UHW drafted the agreement and included the provision.

It follows from the terms of UHW's paragraph 12 that there could be no binding settlement agreement without actual signatures.  UHW is hoist with its own petard.


V

The final question is whether restitution is, in the words of the Restatement (Third), "necessary to avoid unjust enrichment."  RESTATEMENT (THIRD) § 18.

The UHW argument has an odd twist.  Instead of attempting to establish an affirmative defense that UHW would not be unjustly enriched by keeping funds garnished on account of a judgment that was subsequently reversed, UHW contends that if it were to disgorge the $15,830.04 that it took from Borsos, then Borsos would be unjustly enriched.


A

The reluctance of UHW to talk about whether it would be unjustly enriched by keeping the funds garnished on a later-reversed judgment does not make that question any less relevant.

There being no affirmative defense asserted by UHW, unjust enrichment of UHW on the reversed money judgment is both presumed and patent.  In addition, a powerful policy reason regarding the viability of the statutory bankruptcy discharge further dictates the same conclusion.

1

The requirement of restitution where money is levied and paid in execution of a money judgment that is later reversed is so deeply embedded in at least three centuries of our legal tradition that, as between the parties to the judgment, it amounts to a presumption favoring restitution where a debtor has been compelled by law to pay a claim that on the merits is not legally enforceable.  See, e.g., NW Fuel Co., 139 U.S. at 219 ("the only question of discussion has been as to the proceeding to enforce the restitution"); RESTATEMENT (THIRD) § 18, cmt. e.

As between the parties to the judgment, the presumption that restitution is necessary to avoid unjust enrichment is difficult to gainsay.  The likely affirmative defenses (change of position or no unjust enrichment) are difficult to prove in the face of the need to remedy the misapplication of process inherent in legal compulsion to pay a claim that is not legally enforceable.

As the Restatement (Third) explains, preventing the law from stultifying itself by compelling payment of a claim that the law says may not be compelled "constitutes an important reason for restitution that is independent of the individualized equities of the parties." RESTATEMENT (THIRD) § 18, cmt. e.

In contrast, affirmative defenses are more readily established when restitution is sought from a third party who may be a bona fide payee or bona fide purchaser.  See, e.g., Bank of United States, 31 U.S. at 16-17 (disapproving restitution from nonparty to judgment but noting entitlement to restitution from party to judgment); RESTATEMENT (THIRD) § 18, cmt. g.

Thus, it is when the restitution would be from a third party

that the analysis of "necessary to avoid unjust enrichment" becomes delicate.  But this is not such an instance.

Here, the dispute is between the original parties to the money judgment.  The judgment creditor garnished in reliance on a bankruptcy court judgment that the judgment debt was not discharged in bankruptcy.  That bankruptcy judgment was reversed.  The judgment creditor has not proffered an affirmative defense to counter the presumption that it would be unjustly enriched by keeping the funds.  Its silence on that point is deafening.

It follows that restitution of $15,830.04 is necessary to avoid unjust enrichment of UHW.  As is usual in cases of restitution, interest accrues from the date of the garnishments at the interest rate applicable to the original money judgment. RESTATEMENT (THIRD) § 18, cmt. h & § 53.

2

Bankruptcy discharge policy independently supports restoring the garnished funds to Borsos.

The discharge operated to render "void" the district court's money judgment to the extent it was a determination of the personal liability of the debtor regardless of whether discharge was waived.  11 U.S.C. § 524(a)(1).

The statutory discharge injunction against collection of that discharged judgment debt as a personal liability of the debtor regardless of whether discharge was waived was offended by garnishment.  11 U.S.C. § 524(a)(2).

To be sure, the discharge status and the contempt of the § 524(a)(2) discharge injunction had to be ascertained

18

retroactively because garnishment occurred before reversal.  At
the time of garnishment, the status quo suggested that the
garnishment was permissible.

As noted, the judgment creditor's choice to enforce the
money judgment while it was still on appeal concomitantly
constituted a choice to bear the risk of reversal.  For any money
judgment, that choice was to risk an order of restitution.  For a
discharged money judgment, that choice was to risk an order of
restitution and to risk consequences for retroactive violation of
the § 524(a)(2) discharge injunction.

Excusing restitution would create misguided incentives,
especially in the context of bankruptcy.  There should be an
incentive to be careful when enforcing a judgment still on
appeal.  There should not be an incentive to take a cavalier
approach to the § 524(a)(2) discharge injunction.

Sensible bankruptcy policy dictates fostering incentives for
creditors to proceed with caution in the vicinity of the
bankruptcy discharge.

An appropriate remedy for violation of the § 524(a)(2)
discharge injunction is, at a minimum, restitution.

It follows that restitution is necessary to avoid unjust
enrichment of UHW under general principles of restitution and, on
an adequate, independent basis, as a remedy for violation of the
§ 524(a)(2) discharge injunction.

B

The UHW argument that Borsos would be unjustly enriched if
funds garnished from his wages had to be returned to him amounts

to an argument that he would reap a double recovery because NUHW indemnified him for the garnished funds.

1

From the standpoint of the law of restitution, the argument is misplaced.

First, it incorrectly assumes that Borsos would not be required, in turn, to reimburse NUHW.  This court has determined as a finding of fact that the NUHW board's resolution adopting the indemnification policy came with a condition that it be reimbursed for any garnished funds that ultimately are returned to a judgment debtor.  Thus, if Borsos were to attempt to retain the funds, he would be exposed to a claim by NUHW for breach of contract or for restitution.  See RESTATEMENT (THIRD) § 24.

Second, the argument sidesteps the only unjust enrichment question that matters:  whether UHW would be unjustly enriched by pocketing the funds garnished from Borsos.  The answer is, "yes."

2

From the standpoint of the § 524(a)(2) discharge injunction, a potential double recovery is even less persuasive.

It is beyond cavil that UHW violated the § 524(a)(2) discharge injunction, which is not entirely a toothless tiger. The judgment enforcement activity may have been legally permissible at the time that it occurred, but it was undertaken in the teeth of an appeal with, as previously noted, the risk that reversal could lead to trouble.  Nevertheless, UHW chose to rush forth where angels might fear to tread.

20

UHW's protest that the reimbursement of Borsos by NUHW for the sums garnished might lead to double recovery is not a defense to a restitution order to UHW as a remedy for UHW's violation of the § 524(a)(2) discharge injunction.  To allow UHW to keep the $15,830.04 would confer upon UHW a windfall for its violation.

UHW, as a wrongdoer in this context, is in essentially the same position as a tortfeasor.  By protesting a potential double recovery, UHW implicates the collateral-source rule that applies to torts and similar wrongs.·

It is settled law that payments made to an injured party from other sources are not credited against the wrongdoer's liability, although they cover all or a part of the harm for which the wrongdoer is liable.  RESTATEMENT (SECOND) OF TORTS § 920A(2) (1979) ("Effect of Payments Made to Injured Party").

There is no reason that the collateral-source rule in the law of damages for wrongdoing should not at least inform the analysis of a § 524(a)(2) discharge injunction.[10]

---

[10]The standard rationale for the collateral-source rule comfortably fits § 524(a)(2) discharge injunction violations, which are more analogous to tort than to contract:

> b. Benefits from collateral sources.  Payments made or benefits conferred by other sources are known as collateral-source benefits.  They do not have the effect of reducing the recovery against the defendant.  The injured party's net loss may have been reduced correspondingly, and to the extent that the defendant is required to pay the total amount there may be a double compensation for a part of the plaintiff's injury.  But it is the position of the law that a benefit that is directed to the injured party should not be shifted so as to become a windfall for the tortfeasor. ... If the benefit was a gift to the plaintiff from a third party or established for him by law, he should not be deprived of the advantage that it confers.

RESTATEMENT (SECOND) OF TORTS § 920A, com. b.

Even if Borsos could reap a double recovery, that would not offend the collateral-source rule in the law of damages and would constitute an appropriate measure enforcing the § 524(a)(2) discharge injunction.  Any attendant reimbursement issue between Borsos and NUHW is between them, without intervention by UHW.

Conclusion

Restitution of the $15,830.04 that was garnished from the wages of chapter 7 debtor John Borsos on account of a money judgment that was initially excepted from the bankruptcy discharge by a judgment that was later reversed and that ultimately was discharged in bankruptcy will be ordered. Restitution is required under the analysis described in the Restatement (Third) of Restitution § 18 and the precedents on which it is founded.  Restitution is also appropriate as a remedy for violation of the § 524(a)(2) discharge injunction.  Give the money back.

An appropriate order will issue.


January 22, 2016

_____
UNITED STATES BANKRUPTCY JUDGE